

**ORDERED in the Southern District of Florida on March 29, 2016.**

                                                              **Robert A. Mark, Judge**
                                                          **United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re: | CASE NO. 14-23406-RAM |
| | CHAPTER 13 |
| JULIE LISANA MICHAUD, | |
| Debtor. | |

**ORDER OVERRULING MORTGAGE**
**HOLDER'S OBJECTION TO MOTION TO VALUE**

The Debtor is the owner of property located at 321 NW 84th Terrace, Unit 321, Miami, Florida (the "Home"). The Home is the Debtor's homestead and principal residence. The Home is encumbered by a reverse mortgage in favor of James B. Nutter &

Company ("Nutter"). The mortgage and note were executed in 2007 only by the Debtor's husband, Benito Michaud, and not by the Debtor. The Debtor's husband died on October 9, 2011, and by the terms of the reverse mortgage, the note and mortgage became due and payable upon his death.

The Debtor seeks to reduce the secured amount of Nutter's claim down to the value of the Home on the petition date and, to that end, she filed a Renewed Motion to Value and Determine Secured Status of Lien on Real Property (the "Motion to Value") [DE# 86]. The Debtor and Nutter agree that if the lien can be stripped down, the value of the Home on the petition date was $45,500.[1] The remaining issue is whether a strip down of the mortgage is permissible.

## Discussion

Section 1322(b) of the Bankruptcy Code prohibits debtors from modifying the rights of holders of secured claims if the claim is secured only by a security interest in real property that is the debtor's principal residence. However, §1322(c) provides an exception to the anti-modification provision in §1322(b). Section 1322(c) allows the modification of mortgages on principal residences if "the last payment on the original

---

[1] An Agreed Order valuing the Home was entered on February 11, 2016 [DE# 124].

2

payment schedule... is due before the date on which the final payment under the plan is due...."

The Debtor argues that the §1322(c) exception applies because the Nutter reverse mortgage became due in full when the Debtor's husband died before the filing of this case. This Court has previously concluded that reverse mortgages that become due upon the borrower's death are governed by §1322(c) and may be modified. *In re Gray*, 530 B.R. 501 (Bankr. S.D. Fla. 2015) ("*Gray*"), *citing Fed. Nat'l Mortg. Ass'n v. Griffin* (*In re Griffin*), 489 B.R. 638, 642-43 (Bankr. D. Md. 2013); *In re Brown*, 428 B.R. 672 (Bankr. D. S.C. 2010). Bankruptcy Judge Glenn cited *Gray* and reached the same result in *In re Harmon*, 2015 WL 8249995 (Bankr. M.D. Fla. Dec. 2, 2015).

Nutter has filed a memorandum of law in opposition to the Motion to Value [DE# 112]. Nutter argues that §1322(c) does not apply because the reverse mortgage states that the full debt, "if not paid earlier, is due and payable on May 29, 2095" (A copy of the mortgage is attached to Nutter's Claim Number 1-1, filed in this case).  Based upon the 2095 payment date, Nutter argues that the last payment on the original payment schedule is not due before the end of the chapter 13 plan and therefore, §1322(c) does not apply.

3

The Court rejects Nutter's argument. Reverse mortgages create a security interest in a borrower's principal residence securing future advances payable to the borrower during his lifetime. Under applicable federal regulations, reverse mortgages become "due and payable" when "(i) The consumer dies; (ii) The dwelling is transferred; (iii) the consumer ceases to occupy the dwelling as a principal dwelling." 12 C.F.R. §226.33.

In this case, the original borrower died prepetition, and therefore the reverse mortgage became due and payable prepetition for §1322(c) purposes. The final payment date of 2095, eighty-eight (88) years from the execution of the mortgage in 2007, is not a meaningful date because the borrower was certain to die before that date. As such, it would be absurd to treat the 2095 date in the mortgage as "the last payment on the original payment schedule," for purposes of applying the §1322(c) exception.

Nutter has not cited, and this Court has not found, any cases holding that §1322(c) does not apply to a reverse mortgage that became due and payable prior to bankruptcy by the death of the borrower. Moreover, Nutter's argument that the final payment date in the mortgage renders the §1322(c) exception inapplicable was raised and rejected in one of the early reverse mortgage decisions, the *Brown* case cited earlier. In *Brown*, the

4

lender argued, as Nutter argues here, that §1322(c) did not apply because the maturity date in the loan was beyond the term of the debtor's chapter 13 plan. The court rejected the argument because the death of the borrower accelerated the note causing "the last payment of the debt to be moved to a date that was prior to the date of the final payment on Debtor's chapter 13 plan." 428 B.R. at 676.[2]

The Court also rejects Nutter's slippery slope argument that future debtors could abuse the system by intentionally defaulting and then arguing that the lien may be stripped because the mortgage was accelerated by virtue of the default. That is not a result that this Court would permit. The death of the borrower is the predicted event at the heart of a reverse mortgage; it is not the same as a borrower defaulting under the terms of the reverse mortgage, for example, by failing to maintain insurance on the property. This Court would not apply §1322(c) to a reverse mortgage that is accelerated by a debtor's default in performing an obligation of that type.

In sum, the Court overrules Nutter's objection. The 2095 due date in the reverse mortgage does not affect the Court's conclusion that the mortgage became due, by its terms, when the

---

[2] The reverse mortgage note in *Gray* was due and payable in 2088, but the lender did not argue that the 2088 date rendered the §1332(c) exception inapplicable.

borrower died and therefore, may be modified in this chapter 13 case. Therefore, it is –

**ORDERED** as follows:

1. Nutter's objection to the Motion to Value is overruled.

2. The Debtor's plan shall provide for payment of a secured claim in the amount of $45,500, payable at 5.25% interest, with the $67,096.75 balance of the debt to Netter treated as a general unsecured claim.

###

COPIES TO:

Ralph S. Francois, Esq.
6453 Pembroke Road
Hollywood, FL  33023
(Counsel for Debtor)

Neisi Garcia-Ramirez, Esq.
BROCK & SCOTT, PLLC
P.O. Box 25018
Tampa, FL  33622
(Counsel for James B. Nutter & Company)

Nancy K. Neidich, Trustee
P.O. Box 279809
Miramar, FL  33027

6